IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

WILLIAM JOHNSON,

                Plaintiff,

v.

BRADLEY RUE, SETH HOUGH, MARY
WEAVER, CODY PIPER, SHAWN
OCHS, DEE DEE BROOKHART,
BENJAMIN LEWIS, SHANAE
GILLENWATER, KELLY HARRIS,
ALLY/SON FISCUS, and
NOREEN BAKER,[1]

                Defendants.

Case No. 21-cv-779-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff William Johnson, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center ("Menard"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. He was allowed to procced on failure to protect and deliberate indifference claims stemming from an assault by his cellmate.

This matter is currently before the Court on a motion for summary judgment filed by Defendants Shawn Ochs, Mary Weaver, Cody Piper, Shanae Gillenwater, Benjamin Lewis, and Seth Hough (Docs. 74, 75).[2] Defendants argue that Johnson failed to exhaust

---

[1] Shawn Ochs, Cody Piper, Seth Hough, Shanae Gillenwater (listed in Complaint as Shanae Mayberry), Bradley Rue (Doc. 31), Kelly Harris (Doc. 44), and Allyson Fiscus (Doc. 69) have identified themselves by their proper names. The Clerk of Court is **DIRECTED** to **CORRECT** the docket to reflect Defendants' proper names.

[2] Defendants Dee Dee Brookhart, Bradley Rue, Kelly Harris, Noreen Baker, and Allyson Fiscus

his administrative remedies against them prior to filing his lawsuit. Johnson filed a response in opposition to the motion (Doc. 100).

## FACTUAL BACKGROUND

On July 8, 2021, Johnson filed his Complaint alleging First, Fifth, Eighth, and Fourteenth Amendment claims as well as state law claims for negligence, false imprisonment, intentional infliction of emotional distress, intentional and malicious action, and malicious prosecution (Doc. 1). His Complaint was dismissed for violations of Federal Rule of Civil Procedure 8 because his Complaint was neither simple, concise, nor direct (Doc. 11, p. 4). Johnson was granted leave to submit an amended pleading.

On April 21, 2022, Johnson filed an Amended Complaint alleging constitutional violations stemming from an assault at Lawrence Correctional Center ("Lawrence") by his cellmate, Inmate Tademy (Doc. 14). Johnson's Amended Complaint alleged that on November 1, 2018, Tademy was placed in Johnson's cell. Tademy informed Johnson that he had previously been classified for a single-man cell and had been involved in incidents in four different cells in the two days prior to being housed with Johnson (Doc. 16, p. 2). Johnson informed Correctional Officer ("C/O") Rue and Warden Dee Dee Brookhart about Tademy's status and his strange behaviors and threats.

Tademy assaulted Johnson on November 28, 2018 (*Id.* at p. 3). Johnson suffered a broken nose, finger, and toe, a split lip, cuts, and bruises (*Id.*). He alleges that Allyson Fiscus and later Seth Hough, Noreen Baker, Shawn Ochs, Mary Weaver, Kelly Harris,

---

did not file a dispositive motion on the issue of exhaustion nor did they join in the other defendants' motion.

Cody Piper, Benjamin Lewis, and Shanae Gillenwater denied his request for medical care or to be sent to an outside hospital (*Id*. at pp. 3-4).

Johnson was allowed to proceed on the following counts:

Count 1:    Eighth Amendment claim against Dee Dee Brookhart and Bradley Rue for failing to protect Johnson from Tademy.

Count 2:    Eighth Amendment deliberate indifference claim against Allyson Fiscus, Noreen Baker, Seth Hough, Shawn Ochs, Mary Weaver, Cody Piper, Benjamin Lewis, Kelly Harris, and Shanae Gillenwater for failing to provide him treatment, send him to an outside hospital, or conduct a Prison Rape Elimination Act ("PREA") investigation after the assault.

(Doc. 16).

On March 6, 2023, Defendants Shawn Ochs, Mary Weaver, Cody Piper, Shanae Gillenwater, Benjamin Lewis, and Seth Hough filed a motion for summary judgment, arguing that Johnson failed to exhaust his administrative remedies against them as it relates to Count 2 (Docs. 74, 75).[3] Defendants identify several grievances filed by Johnson after the assault. Those grievances include the following:

**December 28, 2018 Grievance:**   Johnson labeled this grievance as dealing with staff conduct, as well as assault and attempted sexual assault (Doc. 75-2, pp. 148-168). Johnson indicated that he was assaulted by Tademy on November 28, 2018, and described the assault in detail (*Id*. at p. 151). He complained that in the days prior to the assault, he requested a cell move from Lt. Rue but the move never occurred. After the assault, Hough and other officers removed Johnson from the cell and walked him to the healthcare unit (*Id*.). Johnson complained that he was only wearing his underwear, shorts, and

---

[3] Neither Brookhart nor Rue filed a motion for summary judgment on the issue of exhaustion. Thus, Count 1 will remain pending, regardless of whether Johnson exhausted his administrative remedies as to Count 2. Further, Allyson Fiscus, Kelly Harris, and Noreen Baker have neither filed a dispositive motion as to Count 2 nor asked to join in the pending dispositive motion. Thus, Count 2 as to Fiscus, Harris, and Baker remains pending.

two left shoes and walked outside in 30-degree weather. At the healthcare unit, an unknown nurse (later identified as Allyson Fiscus) confirmed that he suffered broken bones, a busted lip, cuts, and bruises (*Id.*). She refused, however, to take x-rays of his injuries or check for a concussion (*Id.*). She also told Johnson that she would not take a blood test to check for possible diseases despite being exposed to Tademy's blood (*Id.*). Johnson requested that he not receive disciplinary action and to have all disciplinary reports thrown out because he was attacked by Tademy (*Id.* at p. 150).

The grievance was fully exhausted. The counselor indicated that Johnson was seen by healthcare staff and physician approved treatment protocol was followed (*Id.* at p. 166). The counselor further indicated that Rue informs inmates requesting a cell change to write a request slip because a previous memorandum directed correctional officers not to contact the placement office about requests (*Id.*). Rue stated in response to the grievance that if Johnson asked for a cell move, he would have directed Johnson to write a request slip (*Id.*).

In response to the counselor's findings, Johnson attached a note stating that Rue never informed him of the protocol for requesting a cell move (*Id.* at p. 167). Johnson contended that he would have followed the procedures if informed of them, but he did not submit a request slip because Rue informed him that he would be moved (*Id.*). The grievance officer noted that the grievance was forwarded to the PREA coordinator, intel, and internal affairs officers for investigation (*Id.* at p. 149). Johnson would be notified once the investigation was completed.

Johnson appealed the grievance to the ARB. He attached an "Amended Supplement Consideration" (*Id.* at pp. 153-156). Johnson stated that he was transported to the healthcare unit wearing only gym shorts, underwear, mismatched shower shoes, and was covered in blood and bodily fluids (*Id.* at p. 154). He stated that he requested x-rays, a concussion examination, and blood tests for HIV and Hepatitis (*Id.*). "Medical staff" denied his requests (*Id.*). On February 27, 2019, the Administrative Review Board ("ARB") found the grievance to be moot because Johnson's claims were under investigation (*Id.* at p. 148). Johnson resubmitted his grievance to the ARB in April 2019 (*Id.* at p. 118). It was returned to Johnson because it had already been addressed (*Id.*).

**January 14, 2019 Letter to ARB:**   On January 15, 2019, the ARB received a
letter from Johnson about the assault (Doc. 75-2, p. 169). The letter,
dated January 14, 2019, indicated that Johnson submitted a grievance
on November 27, 2019 through the institutional mail (*Id.* at p. 170).
The grievance discussed the events that led up to the assault,
including Johnson's attempts to warn certain officials about the
situation with his cellmate (*Id.*). On January 24, 2019, the ARB
returned the letter with instructions to following the rules for filing
grievances (*Id.* at p. 169). The ARB noted, however, that it would
contact the warden and internal affairs about Johnson's allegations
(*Id.*).

**February 20, 2019 Grievance:**   On February 20, 2019, Johnson, now at
Menard Correctional Center, submitted another grievance about the
assault (Doc. 75-2, pp. 141-147). He also attached his December 28,
2018 grievance (*Id.* at pp. 144-146). Johnson noted the grievance was
in response to the Prison Rape Elimination Act ("PREA")
investigation being deemed unsubstantiated (*Id.* at p. 142). He
marked that he was grieving staff conduct and a PREA dismissal.
Johnson again described the attack with Tademy and noted that this
statements regarding the attack did not change through the course
of the investigation. He noted that he informed Lt. Hough of the
assault after Hough arrived at his cell and he also informed medical
staff of the attack (*Id.* at p. 143). Johnson's grievance expressed his
confusion as to why the PREA investigation deemed his claims as
unsubstantiated. He noted the "reporting employee" did not explain
the unsubstantiated finding and did not include any facts that
contradicted Johnson's account (*Id.*). Johnson complained that
"employees and the administration at Lawrence" denied him due
process and equal protection in relation to his PREA complaint.
Johnson further noted that he was denied medical care on November
28, 2018 (*Id.*). His grievance requested that his PREA claims be
deemed substantiated (*Id.*). He also sought a blood test for HIV and
Hepatitis B and C (*Id.*). The grievance was sent directly to the ARB
because it dealt with issues which occurred at another facility. The
ARB deemed the grievance moot because the PREA investigation
was completed (*Id.* at p. 141). To the extent Johnson requested
medical testing, the ARB directed Johnson to submit a request slip to
the healthcare unit (*Id.*).

**May 29, 2019 Grievance**:   On May 29, 2019, Johnson submitted a grievance
while at Menard marked medical treatment and PREA blood test
(Doc. 75-2, pp. 29-35). Johnson again mentioned the November 2018

assault. He complained that he was never taken to an outside hospital or had his blood tested for diseases (*Id*. at p. 33). He noted that after filing an earlier grievance, he had his blood drawn for testing on February 21, 2019, but complained that his blood should have been drawn at three, six, and nine months. Despite requests for a three-month blood draw, Johnson complained that the healthcare unit refused additional blood tests (*Id*.). The counselor solicited a response from the healthcare unit which indicated that a blood test was taken on February 4, 2019 and nothing in the medical records suggested that labs needed to be repeated at three month intervals (*Id*. at pp. 31, 35). The grievance was deemed moot by the grievance officer because there was no order for repeat labs (*Id*.). Johnson was further offered a rape kit upon transferring to Menard and claiming a PREA violation but refused the offer (*Id*.). The ARB denied the grievance because Johnson refused a follow-up with an outside provider upon his transfer to Menard (*Id*. at pp. 29-30). There was also nothing in the medical record suggesting that repeat labs needed to be completed (*Id*.).

## LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must

occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Johnson was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer ["CAO"] within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id*.

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after

receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate

appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review

Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## ANALYSIS

Because there are no disputes of material fact, the Court finds it unnecessary to

hold an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

In Count 2 of his First Amended Complaint, Johnson alleged that various

individuals, including Allyson Fiscus, Noreen Baker, Seth Hough, Shawn Ochs, Mary

Weaver, Cody Piper, Benjamin Lewis, Kelly Harris, and Shanae Gillenwater failed to

provide him medical treatment, send him to an outside hospital, or conduct a PREA

investigation after the assault. The claim alleges violations of the Eighth Amendment

both in regard to his medical treatment and the investigation into this PREA complaint.

The Court addresses each claim in turn.

### A. Medical Claims

As to Johnson's medical claims, he points to three grievances which he argues

exhausted his claims in Count 2. Johnson argues that his grievances dated December 28,

2018, February 20, 2019, and May 29, 2019, all included enough information to put prison

officials on notice of his claims, despite failing to name the defendants.

Although exhaustion is not intended to provide individual notice to each prison

official who might later be sued, it is designed to provide the prison with notice of the

problem and give them an opportunity to fix it. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir.

2011) (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)); *Turley v. Rednour*, , 649 (7th Cir. 2013).

As such, an inmate must provide enough information to serve the grievance's function

of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox*, 655 F.3d at 722. The Illinois Administrative Code requires that an inmate's grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 Ill. Admin. Code §504.810(c). An inmate does not have to specifically identify the individual by name, but he must include as much descriptive information as possible. *Id.*

None of Johnson's grievances includes enough information to give the prison a fair opportunity to address Johnson's complaints against the named Defendants regarding his medical care. Both his December 28, 2018 and May 29, 2019, grievances specifically discuss the medical care Johnson received after the assault. But nothing in the grievances indicate that Johnson was complaining about care provided by Ochs, Weaver, Piper, Gillenwater, or Lewis.

The December grievance discusses the medical care he obtained directly after the assault. The grievance mentions that Hough walked Johnson to the healthcare unit, but there are no allegations to suggest that Hough failed to provide Johnson with medical care. The grievance merely alleges that Hough handcuffed and escorted Johnson to the healthcare unit, albeit in his underwear and shower shoes, in 30-degree temperatures. But Johnson's Amended Complaint alleges that Hough refused Johnson's request to be taken to an outside hospital and nothing in the grievance indicates that Hough participated in any decision regarding Johnson's medical care (Doc. 16, p. 3). Nor do any of the allegations in the grievance put prison officials on notice that Johnson took any

issue with Hough's interactions with him on the day of the assault.

The December grievance does allege that a Jane Doe nurse refused Johnson care, but that Jane Doe nurse was later identified as Allyson Fiscus, who did not file a dispositive motion on the issue of exhaustion. None of the other defendants who filed the summary judgment motion are identified or even alluded to in the grievance. Johnson maintains that Ochs and Weaver were internal affairs officers, Piper was the PREA officer at Lawrence, and Lewis and Gillenwater were members of the adjustment committee (Doc. 100, p. 4). These officials are not mentioned in the grievances in regard to Johnson's medical care. Thus, the December grievance fails to exhaust any medical claims against Defendants Hough, Ochs, Weaver, Piper, Gillenwater, or Lewis.

Johnson's subsequent grievances in February or May 2019 likewise do not exhaust his claims against these defendants. Johnson argues that his February 20, 2019, and May 29, 2019, grievances dealt with his medical treatment. Johnson's February 2019 grievance focuses on the PREA investigation. He restates his allegations regarding the assault by Tademy and notes that his version of events remained the same when he reported the assault to Hough and the medical staff he interacted with on the day of the assault. As to his medical care, he merely states that he was denied care on November 28, 2018, while at the healthcare unit. But there are no allegations to suggest he requested care from, or was denied care by, any of the named defendants.

Further, nothing in the May 2019 grievance suggests to grievance officials that Johnson was complaining about the named defendants. In that grievance, Johnson complained about the lack of lab tests directly after the assault and in the months

following the assault. The grievance specifically states that he sent "several requests to healthcare, to no avail." (*Id*. at p. 33). He states in an attached letter that he informed "medical staff" of the assault and attempted sexual assault, but he fails to allege that he informed other staff, including internal affairs officers, adjustment committee members, or correctional officers, of his need for medical care. Nor do the responses suggest that grievance officials had any notice of complaints regarding other staff members. The response from the healthcare unit administrator indicates that Johnson was seen by medical staff on the day of the assault, and later seen by a nurse practitioner and a nurse at Menard Correctional Center (*Id*. at p. 35). There is no notice of complaints regarding prison officers' involvement in Johnson's medical care. Thus, Johnson's grievances do not exhaust his medical claims against Ochs, Weaver, Piper, Hough, Lewis, and Gillenwater.

### B.  PREA Investigation

As to his claim alleging that Defendants failed to investigate his PREA claim, Johnson's December 2018 grievance does not exhaust those claims because the PREA investigation was not even completed at that time. Grievance officials noted that the grievance was forwarded to the PREA coordinator, intelligence, and internal affairs for investigation (Doc. 75-2, p. 149). The ARB similarly noted that the investigation was ongoing (*Id*. at p. 148). Further, Johnson did not complain about Hough, Ochs, Weaver, Piper, Gillenwater, or Lewis concerning the investigation. Although he requested not to be held responsible or subject to disciplinary action, nothing in the grievance even suggests that Johnson had been issued a disciplinary report or took issue with any discipline resulting from the assault (*Id*. at p. 150). Similarly, Johnson's May grievance

only focused on his medical care and did not take issue with the PREA investigation.

Johnson's February grievance, however, does complain about the investigation and the findings of the PREA investigation. He expressed confusion with the investigation's findings that his claims of assault and attempted rape were unsubstantiated, and he noted that the "reporting employee" failed to explain why the allegations were unsubstantiated (*Id*. at p. 143). He also alleged he was "denied due process and equal protection…in relation to PREA" when his PREA claim was dismissed. Johnson attached the PREA investigation findings to his grievance, but the only official named on that form is Dee Dee Brookhart (*Id*. at p. 147). The "reporting employee" mentioned by Johnson appears to be Brookhart, who did not file a motion on the issue of exhaustion.

But Johnson did complain about "employees and the administration at Lawrence" who failed to substantiate his PREA claim. The grievance officer previously acknowledged in Johnson's December grievance that a PREA complaint had been forwarded to the PREA coordinator and internal affairs for investigation. Further, in returning Johnson's January 2019 letter, the ARB noted that his PREA allegations were forwarded to the warden and internal affairs. Thus, in investigating Johnson's claim regarding the PREA investigation's findings, grievance officials would have been on notice of the individuals who investigated such claims, the PREA coordinator and internal affairs officers. Johnson indicates in his motion that Cody Piper was the PREA officer. Shawn Ochs and Mary Weaver were internal affairs officers (Doc. 100, p. 4). The Court finds that the substance of Johnson's grievance, his dissatisfaction with the PREA

investigation and findings, was enough to put officials on notice as to issues with those individuals involved in that investigation. The grievance response to the December grievance makes clear those officials were the PREA coordinator and internal affairs officers. Johnson provided all the information he had as to the individuals who dismissed his PREA complaint. *See Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010) ("it would be unreasonable to expect that, for every set of facts, an inmate will be able to peel back layers of bureaucracy and match a disputed decision with the prison employee responsible for that decision"). Further, the ARB denied the grievance on the merits, noting that the investigation was completed. The ARB did not reject the grievance for failing to identify the proper individuals associated with the investigation. Thus, Johnson adequately exhausted his claim regarding the investigation of his PREA claims.

But the grievance does not serve to exhaust claims against Lieutenant Hough and adjustment committee members Lewis and Gillenwater. The grievance did not mention those officers in regard to the PREA investigation. The grievance does not discuss any discipline that he received nor does it take issue with any disciplinary proceeding. Nothing in the grievance would put officials on notice that Johnson was complaining about adjustment committee members. Lieutenant Hough is mentioned in the grievance but only to demonstrate that he told numerous staff members the same facts regarding the assault, thus substantiating his claim. The grievance does not suggest Hough was involved in the PREA investigation, nor does it complaint about any action taken by Hough. Thus, the February grievance does not exhaust the claims against Lewis, Gillenwater, or Hough.

CONCLUSION

For the reasons stated above, the motion for summary judgment (Doc. 74) is **GRANTED in part and DENIED in part.** Summary judgment is **GRANTED** as to Shanae Gillenwater, Benjamin Lewis, and Seth Hough because Johnson failed to exhaust his administrative remedies as to these officials prior to filing his lawsuit. The motion, however, is **DENIED** as to Shawn Ochs, Mary Weaver, and Cody Piper, but only as it relates to their investigation of Johnson's PREA complaint. The Clerk of Court is **DIRECTED** to enter judgment in favor of Gillenwater, Lewis, and Hough at the close of the case. The following claims remain:

Count 1: Eighth Amendment claim against Dee Dee Brookhart and Bradley Rue for failing to protect Johnson from Tademy.

Count 2: Eighth Amendment deliberate indifference claim against Allyson Fiscus, Noreen Baker, Kelly Harris, Shawn Ochs, Mary Weaver, and Cody Piper for failing to conduct a PREA investigation after the assault.

Now that the issue of administrative exhaustion has been resolved, the Court **LIFTS** the stay on merits discovery. The Court will enter a merits discovery order setting forth the deadlines and procedures for the remaining discovery.

**IT IS SO ORDERED.**

**DATED:   November 13, 2023**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**