IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM JOHNSON, <br><br> **Plaintiff,** <br><br> v. <br><br> BRADLEY RUE, MARY WEAVER, CODY PIPER, SHAWN OCHS, DEE DEE BROOKHART, KELLY HARRIS, ALLYSON FISCUS, and NOREEN BAKER, <br><br> **Defendants.** | Case No. 3:21-cv-00779-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff William Johnson brought this action in July 2021 for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. His initial complaint alleged First, Fifth, Eighth, and Fourteenth Amendment claims as well as state law claims for negligence, false imprisonment, intentional infliction of emotional distress, intentional and malicious action, and malicious prosecution. (Doc. 1). That complaint was dismissed for violations of Federal Rule of Civil Procedure 8 because the complaint was neither simple, concise, nor direct (Doc. 11, at 4). Johnson was granted leave to submit an amended pleading.

On April 21, 2022, Johnson filed an amended complaint alleging constitutional violations stemming from an assault at Lawrence Correctional Center ("Lawrence") by his cellmate (Doc. 14). A preliminary review of the amended complaint pursuant to 28 U.S.C. § 1915A permitted Johnson to proceed on two counts under the Eighth

Amendment (Doc. 16), the latter of which was narrowed by this Court's grant of partial summary judgment for failure to exhaust administrative remedies (Doc. 114). The two counts remaining before the Court are best understood as comprising three claims:[1]

| | |
|---|---|
| Claim One: | Eighth Amendment claim against Dee Dee Brookhart and Bradley Rue for failing to protect Johnson from his cellmate. |
| Claim Two: | Eighth Amendment deliberate indifference claim against Noreen Baker, Allyson Fiscus, and Kelly Harris for failing to provide Johnson medical treatment. |
| Claim Three: | Eighth Amendment deliberate indifference claim against Noreen Baker, Allyson Fiscus, Kelly Harris, Shawn Ochs, Cody Piper, and Mary Weaver for failing to conduct a Prison Rape Elimination Act (PREA) investigation after the assault. |

At the time of the underlying events, each defendant worked at Lawrence. (Doc. 144, at 2–3; *see* Doc. 123, at 3–8).

Defendants Noreen Baker, a Licensed Practical Nurse; Kelly Harris, a Mental Health Professional; and Allyson Fiscus, a Registered Nurse (collectively, the "medical defendants") moved for summary judgment. (Docs. 122, 123). Defendants Dee Dee Brookhart, the Assistant Warden of Programs; Shawn Ochs, a Correctional Lieutenant in the Investigation Unit; Cody Piper, an Internal Affairs Officer; Bradley Rue, a Corrections Officer; and Mary Weaver, an Internal Affairs Officer (collectively, the "non-medical defendants") moved for summary judgment as well. (Docs. 143, 144). Johnson filed

---

[1] In this Court's previous Orders, the second and third claims were treated as a single claim, termed "Count Two." (Docs. 16, 114). However, because only three of the defendants still party to this action moved for summary judgment on the issue of exhaustion, it is simpler to analyze Count Two by disaggregating it into two claims: one against Defendants Baker, Fiscus, Harris, Ochs, Piper, and Weaver; and one against Defendants Baker, Fiscus, and Harris alone. The Court has done so for the purposes of this Order to minimize confusion.

responses in opposition to each motion (Docs. 138, 145), to which timely replies were filed by each group of defendants (Docs. 140, 147).

As relevant here, both the medical and non-medical defendants argue the undisputed material facts show that Johnson's claims against them are time-barred under the applicable statute of limitations. (Doc. 123, at 11–13; Doc. 144, at 8–10). Their other arguments in favor of summary judgment need not be addressed, because the statute of limitations bars Johnson's claims against them.

## FACTUAL BACKGROUND

On November 28, 2018, while incarcerated at Lawrence, a fight broke out between Johnson and his cellmate, Roderick Tademy. (*E.g.*, Doc. 144, at 2–3). Johnson maintains that the altercation began after Tademy attempted to sexually assault him and alleges that he put prison officials on notice of the danger posed to him by Tademy. *Id.* at 3–4. It is undisputed that he did at least ask Corrections Officer Rue to change cells based on concerns about Tademy. *Id.* at 4.

After the fight was broken up, Johnson was escorted to the healthcare unit. *Id.* at 4. There, he was seen by Nurse Fiscus immediately after the fight and by Nurse Baker later that day. (Doc. 123, at 3–4). He was also seen by Mental Health Professional Harris twice in the following week. *Id.* at 4–6. Johnson alleges that the treatment Fiscus, Baker, and Harris provided was so deficient that it constituted deliberate indifference in violation of the Eighth Amendment (Doc. 14, ¶¶ 46–56; Doc. 138, at 4–7).

At some point—the timing is disputed—Johnson made a PREA allegation against his cellmate, claiming Tademy had tried to sexually assault him. (*See* Doc. 123, at 3;

Doc. 144, at 4–5; Doc. 145, at 8). An investigation of the PREA allegation was conducted. (*E.g.*, Doc. 123, at 7). On January 7, 2019, after the conclusion of the investigation, Johnson's allegations were deemed "unsubstantiated." *Id.* Johnson alleges the investigation was so deficient that it, too, constituted deliberate indifference. (Doc. 14, ¶ 98; Doc. 145, at 7–9).

On December 28, 2019, Johnson filed his first grievance relevant to the claims at issue here (the "December grievance"). (*E.g.*, Doc. 144, at 5). In it, Johnson complained that, even though he had alerted prison officials of his concerns, he was not moved from his cell before Tademy assaulted him. (Doc. 123-11, at 70–71). He also alleged that he was given inadequate medical treatment. *Id.* at 71. The grievance was appealed through all levels of review until it was finally denied as moot on March 6, 2019, by the Administrative Review Board (ARB) and the Director of the Department (the "Director"). *Id.* at 68–76.

Johnson also filed a grievance on February 20, 2019 (the "February grievance"), which concerned the inadequacy of both his medical treatment after the assault and the factual investigation of his PREA allegations against Tademy. *Id.* at 62. After proceeding through the required levels of review, the February grievance was denied by the ARB as moot; when the Director concurred on April 10, 2019, the determination became final. *Id.* at 61.

On March 13, 2019, Johnson was transferred from Lawrence to Menard (Doc. 123, at 8), where he currently resides (Doc. 145).

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is proper only if the moving party can demonstrate, through pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). "A genuine dispute over a material fact exists if 'the evidence is such that a reasonable jury could return a verdict' for the nonmovant." *Machicote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if it might affect the outcome of a suit under the relevant substantive law. *Ruffin-Thompkins*, 422 F.3d at 607.

To determine if a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmovant. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson*, 477 U.S. at 255. But "[i]nferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014).

The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160–61 (1970); *see also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). Once the moving party sets forth the basis for summary judgment, the burden shifts to the nonmoving party, who must go

beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp.*, 477 U.S. at 322–24. A moving party is entitled to judgment as a matter of law where the nonmoving party "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, 477 U.S. at 323. The party opposing summary judgment must offer admissible evidence in support of his or her version of events; hearsay evidence does not create a genuine issue of material fact and cannot be considered on summary judgment. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009); *see also Prude v. Meli*, 76 F.4th 648, 661 (7th Cir. 2023).

## II. Statute of Limitations

Illinois' two-year statute of limitations governs this § 1983 action. *See Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 517 (7th Cir. 2019) (citing *Devbrow v. Kalu*, 705 F.3d 765, 767 (7th Cir. 2013)). While federal law governs the date of accrual, which starts the clock on the limitations period, state law provides the rules for tolling the limitations period and stopping the clock. *Id.* (citing *Devbrow*, 705 F.3d at 767); *see also Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001).

The relevant tolling statute in Illinois provides that when "the commencement of an action is stayed by . . . statutory prohibition, the time of the continuance of the . . . prohibition is not part of the time" in the limitations period. 735 ILL. COMP. STAT. 5/13-216; *see also Johnson*, 272 F.3d at 521. Cases governed by the Prison Litigation Reform Act (PLRA), such as this one, require prisoners to exhaust their administrative remedies before filing suit under § 1983. 42 U.S.C. § 1997e(a). Thus, the clock does not start on a

claim until the prisoner has satisfied the exhaustion requirement.[2] *See Johnson*, 272 F.3d at 521–22; *Wilson*, 932 F.3d at 518.

### III.     Exhaustion of Administrative Remedies

To exhaust one's administrative remedies as an inmate of the Illinois Department of Corrections, one must follow their Grievance Procedures for Offenders ("grievance procedures"). 20 Ill. Admin. Code § 504.800 *et seq.* Within 60 days of the discovery of an incident, the grievance procedures require inmates to file their grievance with a counselor. *Id.* § 504.810(a). Grievances that cannot be resolved through routine channels are then sent to a grievance officer, who reviews the grievance, provides a written response to the inmate, and reports their findings and recommendations to the Chief Administrative Officer. *Id.* §§ 504.820(a), .830(a), .830(e). The Chief Administrative Officer reviews the report of the Grievance Officer and renders a decision. *Id.* § 504.830(e).

If the inmate is still unsatisfied, he may appeal to the Director through the ARB. *Id.* § 504.850(a). The ARB makes a written recommendation to the Director, who issues the final determination. *Id.* § 504.850(d)–(e). The Director's decision finalizes the grievance process; once issued, the inmate's administrative remedies are considered

---

[2] There is some confusion in the case law concerning how the PLRA's exhaustion requirement operates under the Illinois tolling statute. Some cases treat the tolling statute as delaying the start of the limitations period until after the grievance process is completed; others treat the statute as simply pausing the clock from the beginning of the grievance process until its end. *See Schlemm v. Pizzala*, 94 F.4th 688, 690 (7th Cir. 2024) (acknowledging the inconsistent precedent but leaving the question open). Because either method gives us the same result in this case, the Court assumes without deciding that the more generous approach—that the limitations period is tolled from the time a claim accrues until the end of the grievance process—should be applied. *See generally id.* at 690–95 (Hamilton, J., concurring) (explaining that the more generous approach is demanded by the plain language of the statute and that prior inconsistent statements from that court were either dicta or from non-precedential decisions).

exhausted. *See, e.g.*, *Dole v. Chandler*, 438 F.3d 804, 807 (7th Cir. 2006).

### ANALYSIS

There are two factual questions relevant to whether the statute of limitations bars Johnson's claims: (1) when did each claim accrue, and (2) how long was each claim tolled while Johnson exhausted his administrative remedies? If the undisputed material facts show that each claim had accrued and ceased to be tolled more than two years before Johnson filed his complaint on July 8, 2021,[3] then the defendants are entitled to summary judgment. As explained below, Johnson's claims are time-barred because each claim accrued no later than March 13, 2019, and each was tolled until no later than April 10, 2019.

### I.     Accrual

The limitations period does not begin to run on claims that have yet to accrue. *See, e.g.*, *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001). The Seventh Circuit has recognized that, in the context of Eighth Amendment deliberate indifference claims, violations do not accrue as soon as the would-be plaintiff learns of the injury. *See, e.g., id.* at 317–18. Sometimes, the violation of law is, in some sense, "continuing," meaning the limitations period will not start at the very first incident. *Turley v. Rednour*, 729 F.3d 645, 654–55 (7th Cir. 2013) (Easterbrook, C.J., concurring) (explaining the Seventh Circuit's

---

[3] As mentioned, Johnson's original complaint was dismissed without prejudice for violating Federal Rule of Civil Procedure 8. (Doc. 11). His amended complaint was not filed until April 21, 2022. Normally, Federal Rule of Civil Procedure 15(c) governs relation back of amendments. However, because all parties' have appeared to assume that Johnson's amended complaint relates back (*See* Doc. 123, at 12–13; Doc. 138, at 4; Doc. 144, at 10; Doc. 145, at 4), and because the outcome is the same with either date, the Court assumes the amended complaint relates back to the date of the original complaint.

continuing violation doctrine); *see also Bernard v. Scott*, 501 F. Supp. 3d 611, 620–22 (N.D. Ill. 2020) (same). Because the alleged wrong continues for as long as the prison has the power to do something about a plaintiff's condition but declines to do so, the claim does not accrue until the plaintiff receives treatment or leaves the prison. *See Heard*, 253 F.3d at 318.

Johnson was allegedly assaulted by Tademy on November 28, 2018 (*e.g.*, Doc. 144, at 4), but he argues that the defendants' actions and inactions after the assault constituted a continuing violation; thus, his claims did not accrue immediately. (Doc. 138, at 3; Doc. 145, at 3). It is undisputed, however, that Johnson was later transferred from Lawrence—where each defendant worked at all relevant times—to Menard on March 13, 2019. (Doc. 123, at 8). To the extent that each defendant was involved in any alleged violation, their involvement necessarily ended when Johnson was transferred, terminating their "power to do something about [the plaintiff's] condition." *Wilson*, 932 F.3d at 517–18 (alteration in original) (quoting *Heard*, 253 F.3d at 318). Thus, the undisputed material facts show that each of Johnson's claims against these defendants accrued no later than his departure from Lawrence. *Bernard*, 501 F. Supp. 3d at 622 (plaintiff's continuing violation claims accrued each time he was transferred between or released from jails); *cf. Wilson*, 932 F.3d at 517–18 ("But even under [a continuing violation] theory, if a defendant leaves the institution altogether, his involvement in the alleged wrong is over. The date of the defendant's departure thus marks the last possible

time when the claim might have accrued."). Thus, all of Johnson's claims had accrued by March 13, 2019. [4]

## II. Tolling

Though all of Johnson's claims accrued no later than March 13, 2019, it must still be determined whether the undisputed material facts show that the limitations period had ceased to toll before July 8, 2019. All parties agree that Johnson's claims were tolled while he exhausted his administrative remedies through the prison grievance procedures. (Doc. 123, at 11–12; Doc. 144, at 8–9; *see* Doc. 138, at 4; Doc. 145, at 4). Thus, each claim was tolled until the relevant grievance was finally determined by the ARB and Director.

### a. Claim One: Failure to protect

It is clear from the evidence before the Court that the substance of Claim One—that Johnson's Eighth Amendment rights were violated by a failure to protect him from Tademy—was raised by the December grievance. (Doc. 123-11, at 25–28). In the grievance, Johnson explained that he had put prison officials on notice of the threat Tademy posed to him. *Id.* at 26–28. He claimed that Corrections Officer Rue and others

---

[4] It is worth noting that certain claims likely accrued earlier. For instance, Claim One concerns the failure of Lawrence officials to protect Johnson from his cellmate, who allegedly attacked him on November 28, 2018. That alleged failure was complete as soon as the attack occurred, so the violation would have accrued immediately. Moreover, to the extent any of Johnson's claims are based on the delay in providing him with STI testing after the alleged assault, any such claim would have accrued no later than February 21, 2019, as it is undisputed that he was provided with the requested STI testing on that date. (Doc. 123, at 8; Doc. 123-10, at 129). Whether those claims accrued on November 28, February 21, or March 13, however, does not affect the outcome of this case; even the most generous accrual date still leaves Johnson's complaint outside the limitations period.

"showed deliberate indifference to my repeated requests for help," and explicitly stated it was "a failure to provide a safe living environment." *Id.* at 28. One of his requests for relief was to be transferred to another cell, cellhouse, or facility, as he "fear[ed] for [his] life." *Id.* at 26–28. Even if it weren't obvious that the December grievance concerns the same facts at issue in Claim One, it is undisputed by the parties that the December grievance "grieved the relevant issues in this matter." (Doc. 144, at 5; *see* Doc. 145 (failing to admit, deny, or identify a lack of record support for any of the material facts identified by the non-medical defendants)).

Because this grievance undisputedly exhausted Johnson's administrative remedies with respect to the issues in Claim One, this claim was only tolled until March 6, 2019.[5] (Doc. 123-11, at 68). Therefore, the limitations period for this claim expired on March 6, 2021—more than four months before Johnson filed this suit.

### b. Claim Two: Failure to provide medical treatment

Claim Two concerns allegations that the medical defendants were deliberately indifferent by failing to provide adequate medical treatment to Johnson after the altercation. The alleged deliberate indifference stems largely from claimed inaction on the part of the defendants, such as a failure to test him for a concussion, to give him an

---

[5] Johnson later re-appealed the same grievance to the ARB in April of 2019. (Doc. 123-11, at 25, 37; Doc. 114, at 4). This re-appeal was denied on April 29, 2019, as having already been addressed. (Doc. 123-11, at 25; Doc. 114, at 4). Because the initial denial was the end of the grievance process, this re-appeal does not extend the date at which Johnson's administrative remedies were exhausted; however, even if it had, it would not change the outcome of this case.

X-ray or MRI, to test him for STIs, or to send him to an outside hospital. (Doc. 14, ¶¶ 46–56, 101; Doc. 138, at 5–7).

Johnson's December grievance squarely presented for administrative remediation the issue of medical care:

> After arriving at healthcare an unknown nurse . . . . told me that no x-rays would be taken of my injuries . . . nor would I be checked for a concussion for my head injuries. The nurse also told me that I would not receive a blood test for HIV/AIDS or Hepatitis C, even though I was exposed to Tademy's blood.

(Doc. 123-11, at 70–71). He also discussed the alleged insufficiency of his medical care in the February grievance. (Doc. 123-11, at 63).

Johnson points to no facts and makes no argument suggesting that either grievance was insufficient to exhaust his administrative remedies as to his claim against the medical defendants. (*See* Doc. 138). It is thus undisputed that Claim Two was administratively exhausted no later than April 10, 2019, when the Director issued the final determination for Johnson's February grievance. (Doc. 123-11, at 61). Accordingly, the limitations period expired on April 10, 2021—almost three months before Johnson filed his complaint.

c. **Claim Three: Failure to conduct a PREA investigation**

Johnson's final claim alleges that Nurse Baker, Nurse Fiscus, Mental Health Professional Harris, Correctional Lieutenant Ochs, Internal Affairs Officer Piper, and Internal Affairs Officer Weaver all were deliberately indifferent by failing to conduct a

PREA investigation. Unfortunately, however, it is unclear from the pleadings what precisely Johnson means by "PREA investigation."

The medical defendants appear to have read "PREA investigation" to mean a *medical* investigation, referring specifically to an alleged failure to send Johnson to an outside hospital or test him for STIs. (*See* Doc. 123, at 13–23). Under this reading, which seems to be confirmed by Johnson's response to their motion for summary judgment (*see* Doc. 138, at 6–7), Claim Three is just a subset of Claim Two.

On the other hand, the non-medical defendants' motion for summary judgment treats Claim Three as alleging a failure to adequately conduct a *factual* investigation into whether Tademy attempted to assault Johnson. (*See* Doc. 144, at 14–18). Johnson appears to agree with this characterization, as well, based on his response to their motion for summary judgment. (*See* Doc. 145, at 7–9).

The Court assumes, without deciding, that Claim Three is referring to the failure to adequately conduct a *factual* investigation of Tademy's alleged assault of Johnson.[6] This, too, was administratively exhausted in the February grievance. There, Johnson argued that the investigation of his claims against Tademy was deficient, as "[e]ither the reporting employee [who investigated his claim] does not know the PREA guidelines or ha[d] chosen not to follow them." (Doc. 123-11, at 63). For relief, he requests that his

---

[6] To the extent that Claim Three is about a medical investigation—i.e., sending Johnson to an outside hospital or giving him an STI test—then it does not lie against Ochs, Piper, or Weaver, as this Court has already determined that Johnson's claims against them for deliberate indifference in the provision of medical care were not administratively exhausted. (Doc. 114, at 10–13). As to Baker, Fiscus, and Harris, any claim against them based on a failure to adequately treat Johnson medically was administratively exhausted no later than April 10, 2019, and therefore became time-barred on April 10, 2021.

"PREA claim be substantiated . . . or [that he be] provide[d] . . . with the facts for the dismissal of his PREA claim."

Because the February grievance patently encompasses Johnson's claim for failure to conduct a PREA investigation, its final determination by the ARB and Director sufficed to exhaust his administrative remedies for Claim Three and start the limitations period. That exhaustion occurred on April 10, 2019—two years, two months, and twenty-eight days before Johnson filed his complaint. As such, this claim is time-barred as well.

In response to the defendants' arguments, Johnson does not dispute any of the above facts.[7] Under Federal Rule of Civil Procedure 56(e), this Court would be permitted to treat all the defendants' factual assertions as undisputed and—because those facts show the statute of limitations bars Johnson's claims—grant summary judgment. However, the Court will first address Johnson's counterarguments.

Though he does not cite to the record for this assertion, Johnson states in conclusory fashion that his remedies were actually exhausted on December 28, 2020, when a request for documents related to the PREA investigation in a grievance numbered

---

[7] In fact, neither of Johnson's responsive pleadings contain a Response to Statement of Material Facts. (Docs. 138, 145). At the time they were filed, the local rules required Johnson to include such a section specifically admitting, disputing, or identifying a lack of record support for each material fact listed in the movant's Statement of Material Facts. SDIL-LR 56.1(b) (2023). Under those rules, failure to specifically dispute any fact in a Statement of Material Facts is deemed admitted for the purposes of summary judgment. SDIL-LR 56.1(g) (2023).

44-5-19[8] was denied. (Doc. 138, at 4; Doc. 145, at 4). Therefore, he asserts, his July 8, 2021 complaint was filed well before the December 28, 2022 deadline. (Doc. 138, at 4; Doc. 145, at 4).

This argument does not satisfy Johnson's burden to identify a genuinely disputed issue of material fact about whether the statute of limitations bars his claims. Because of the way Illinois' tolling statute works, the start of the limitations period was only delayed *until* the "statutory prohibition" on "commenc[ing] . . . an action" (here, the PLRA's exhaustion requirement) was satisfied. *See* ILL. COMP. STAT. 5/13-216. Once the defendants pointed to facts establishing that the December and February grievances satisfied that requirement (and thereby started the clock on his claims), Johnson needed to either point to a lack of record support for those facts or point out other facts that would put them in dispute. To merely point to grievances filed and finalized later in time, without more, is insufficient. The failure to dispute that the December and February grievances satisfied the exhaustion requirement thus renders grievance 44-5-19 irrelevant.

Even if Johnson *had* made the argument that the earlier grievances did not exhaust his claim, it would have been to no avail. The evidence before the Court is clear: grievance 44-5-19 is not related to the claims at issue here, while the December and February grievances are. Grievance 44-5-19 was occasioned by an April 5, 2019 "offender

---

[8] Johnson actually refers to this grievance as 44-5-10, but there is no grievance in the record before the Court bearing that number. Indeed, there does not appear to have ever been a grievance with that number. (Doc. 147, at 2; Doc. 148). However, it seems (and the Court assumes) that Johnson means to refer to a grievance numbered 44-5-19. (*see* Doc. 147, at 2; Doc. 148, at 2; Doc. 123-10, at 168).

disciplinary report" which allegedly did not provide him with all the information that would be used to determine his guilt or innocence, "including [his] Prison Rape Elimination Act (PREA) report." *Id.* at 168. In his own words, grievance 44-5-19 sought "[t]o obtain all the documents and information that will be used to support the charges against [him]" in a disciplinary proceeding. *Id.* at 169. Johnson's claims in this case, on the other hand, concern not a failure to provide documents for disciplinary hearings but failures to protect him, to conduct a PREA investigation, or to provide him with medical treatment—all of which are spoken to by the December and February grievances. (Doc. 123-11, at 25–27, 61–63).

Johnson's alternative argument, that "the denial of [grievance 31-6-19's[9] request for] the follow up PREA lab test was not exhausted until November 26, 2019," is flawed for the same reasons. (Doc. 138, at 4; Doc. 145, at 4). First, grievance 31-6-19 was filed at Menard on May 29, 2019 (Doc. 123-10, at 129). Johnson's failure to put in dispute the facts establishing that the earlier December and February grievances satisfied the exhaustion requirement is just as fatal to this grievance as to the other he identified.

Second, in this grievance, Johnson requested a "3-month blood test" for STIs, because the first round of testing *had already occurred* back in February at Lawrence. *Id.* at 129. As above, so below. Grievance 31-6-19 plainly has no bearing on whether the defendants failed to protect him or whether they failed to conduct a factual investigation

---

[9] Johnson does not cite to the record for this proposition, despite Federal Rule of Civil Procedure 56(c). As best the Court can determine, he is referring to grievance 31-6-19, which appears to be the first mention of follow-up STI testing in Johnson's grievances. (*See* Doc. 123-10, at 125–31).

of his allegations against Tademy. It does not even relate to the STI testing portion of his claims against the medical defendants. This grievance clearly is taking issue with the failure of employees at *Menard* to test him for STIs a second time—not a failure of employees at *Lawrence* to test him for the first time. *Id.* Invoking grievance 31-6-19, then, helps Johnson not at all.

In sum, the defendants have identified material facts supported by the record which demonstrate that Johnson's claims are barred by the statute of limitations, which entitles them to judgment as a matter of law. In response, Johnson has not shown that any of those material facts are disputed. Therefore, the Court finds that summary judgment is warranted.

## Conclusion

For these reasons, the motions for summary judgment filed by Noreen Baker, Allyson Fiscus, and Kelly Harris (Doc. 122) and by Dee Dee Brookhart, Shawn Ochs, Cody Piper, Bradley Rue, and Mary Weaver (Doc. 143) are **GRANTED.** The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

DATED: September 26, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**